IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DIANA L. SISK, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, COMMISSIONER )<br>OF SOCIAL SECURITY )<br>ADMINISTRATION, )<br>    Defendant. ) | Civil Action. No. 3:19-cv-00342<br><br>Judge Trauger/Frensley |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 19. Plaintiff has filed an accompanying Memorandum. Docket No. 19-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20. Plaintiff has filed a Reply. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.
## INTRODUCTION

Plaintiff filed her applications for DIB and SSI on January 11, 2017, alleging that she had been disabled since February 1, 2016, due to depression, anxiety, panic attacks, PTSD. Docket No. 15, Attachment ("TR"), TR 217-33, 224-30, 244-52. Plaintiffs applications were denied both

initially (TR 104, 105) and upon reconsideration (TR 134, 135). Plaintiff subsequently requested (TR 152-53) and received (TR 33-62) a hearing. Plaintiff's hearing was conducted on April 11, 2018, by Administrative Law Judge ("ALJ") Angele Pietrangelo. TR 33-62. Plaintiff and vocational expert ("VE"), Pedro Roman, appeared and testified. TR 33-62.

On August 10, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-14. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016 (Ex. B5D).

2. The claimant has not engaged in substantial gainful activity since February 1, 2016, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: Depressive Disorder; Posttraumatic Stress Disorder (PTSD); Attention Deficit Hyperactivity Disorder (ADHD); Stage 1 Diastolic Dysfunction; Degenerative Disc Disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404. 1567(b) and 416.967(b) except she can occasionally engage in postural activities (i.e., climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch and crawl). In addition, this individual also has the following additional mental limitations: She can understand, remember, and carry out only simple and multistep (1-4 step) higher level detailed tasks, but cannot make independent decisions at an executive level. She can sustain adequate concentration, persistence, and pace for periods of at least two hours at a time throughout an eight-hour day with customary work breaks. She can have no more than occasional contact with the general public. She can interact appropriately with supervisors and coworkers occasionally. She can set goals and adapt to infrequent workplace changes.

6. The claimant is capable of performing past relevant work as an assembler and

quality control inspector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2016, through the date of this decision (20 CFR 404.1520(F) and 416.920(f)).

TR 18-27.

On September 1, 2018, Plaintiff timely filed a request for review of the hearing decision. TR 211-12. On March 2, 2019, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id*.

## II.
## REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.
## CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F. 2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*,

3

803 F. 2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F. 2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

### B. Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period

4

Case 3:19-cv-00342   Document 22   Filed 06/03/20   Page 4 of 20 PageID #: 786

of not less than 12 months." 42 U.S.C. § 423(d)(l)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

---

[1] The listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(l), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id*. In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and non-exertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff contends that: (1) The ALJ's physical RFC finding was "unguided by a medical professional's opinion"; (2) The ALJ crafted a mental RFC finding "based on non-examining opinions made with insufficient examining information and discussion of the facts"; (3) The ALJ failed to adequately develop the record; (4) The ALJ failed to support their decision with substantial evidence; and (5) The ALJ was unconstitutionally appointed and the case should be remanded for a new hearing with a different ALJ. Docket No. 19-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's decision should be

6

Case 3:19-cv-00342    Document 22    Filed 06/03/20    Page 6 of 20 PageID #: 788

remanded for further administrative proceedings, including a *de novo* hearing and decision. *Id.*

Sentence four of § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.
42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

### 1. Physical Residual Functional Capacity ("RFC")

Plaintiff maintains that an ALJ is not qualified to interpret medical data and their finding should be supported by an opinion of at least one physician. Docket No. 19-1, p. 13. Plaintiff contends that the ALJ afforded "partial weight" to reconsideration-level consultants in regard to their finding that Plaintiff had severe degenerative disc disease and "little weight" to the initial level medical consultants who also found that Plaintiff had severe degenerative disc disease. *Id* at 14. Plaintiff argues that "the prior decision, upon which the consultants relied…found no severe physical impairment," therefore, " there is no opinion evidence to guide the ALJ concerning the evidence she found to warrant limitation." *Id.*

Defendant responds that the ALJ properly determined Plaintiffs RFC of light work. Docket No. 20, p. 4. Defendant argues that Plaintiffs argument is "premised on an incorrect reading of the

regulation and case law." *Id* at 5. Defendant argues that the ALJ may develop their own RFC based on all the evidence in the record and is "not limited to choosing between competing opinions in the record." *Id*. at 6. Defendant further argues that the evaluation of Residual Functional Capacity is based on the consistency of the record. *Id*. Defendant contends that the ALJ did consider a current medical opinion. *Id*. at 8. Specifically, Defendant contends that the ALJ evaluated the opinion of the agency doctor, Martin Rubinowitz, M.D., and gave this opinion little weight because the ALJ found that Plaintiff was more limited than Dr. Rubinowitz believed, "thus, it is incorrect that there was no current medical opinion." *Id*. Furthermore, Defendant argues "a residual functional capacity finding is based on all the evidence, and the ALJ is not confined to picking and choosing from amongst competing medical opinions," and "the residual functional capacity does not need to be based on a particular medical opinion." *Id*.

Plaintiff replies that the ALJ was not interpreting opinions based on evidence but, instead interpreted the evidence itself. Docket No. 21.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching) , may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC "light

8

Case 3:19-cv-00342   Document 22   Filed 06/03/20   Page 8 of 20 PageID #: 790

work as defined in 20 CFR 404.1567(b) and 416.967(b). " TR 20. The ALJ explained:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally engage in all postural activities (i.e., climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch and crawl). In addition, this individual also has the following additional mental limitations: She can understand, remember, and carry out only simple and multistep (1-4 step) higher level detailed tasks, but cannot make independent decisions at an executive level. She can sustain adequate concentration, persistence, and pace for periods of at least two hours at a time throughout an eight-hour day with customary work breaks. She can have no more than occasional contact with the general public. She can interact appropriately with supervisors and coworkers occasionally. She can set goals and adapt to infrequent workplace changes.

TR 20-21.

In so finding, the ALJ considered Plaintiff's recent diagnosis of Stage 1 Diastolic dysfunction. TR 24-25. Specifically, the ALJ stated:

> Regarding her physical limitations, since the prior decision, the claimant has developed Stage 1 Diastolic dysfunction. She reported some chest discomfort and dizziness when getting up too quickly. However, her doctor advised her that medication cannot fix it and it can only be improved by exercising and by moving the legs. The doctor encouraged her to walk two miles a day to strengthen her heart and told her to come back in six months (Ex. B9F). In addition, she says she can walk only one-third mile a day and stand for up to 15 minutes at a time; however, physical exams routinely found she had normal gait and normal motor strength. The claimant also testified to problems with her hands and she wore gloves to the hearing. She said that she has pain and swelling in the hands; however, there is no evidence in the treatment records to corroborate this claim concerning limited ability to use her hands. Nonetheless, based on her severe degenerative disc disease and severe stage 1 diastolic dysfunction, the undersigned finds that the evidence of record as a whole supports the finding that she is limited to light work activity with the additional postural limitations outlined in the above residual functional capacity.

TR 24-25.

The ALJ also considered the Plaintiff's subjective complaints of pain, stating:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, the extreme limitations she alleged is inconsistent with the medical evidence and other evidence, for the reasons discussed throughout this

9

> decision. As a result, in finding she has the combination of significant physical and mental limitations outlined in the above residual functional capacity, the undersigned has given some weight to the testimony of the claimant and allegations of record, to the extent corroborated and supported by the treatment records and objective evidence (Exs. BlE, B4E, B6E-B7E; Testimony). Moreover, there is no evidence of any current, ongoing adverse medication side effects that would interfere with the claimant's ability to perform work within the above residual functional capacity, and all other medically determinable impairments, alleged or discovered, not specifically addressed were considered and have no functional impact, and would not further reduce the above residual functional capacity assessment.

TR 25.

The ALJ also considered the opinion evidence, stating:

> In finding the claimant has the significant physical limitations outlined in the above residual functional capacity, the undersigned notes that none of the medical consultants completed a physical assessment setting forth any actual functional limitations and the prior hearing decision found the claimant had no severe physical impairments. As a result, the undersigned gives little weight to the prior hearing decision and the initial-level medical consultants (Exs. B1A-B3A) and only partial weight to the reconsideration level consultants (Exs. B8A-B9A) insofar as they found the claimant had severe degenerative disc disease. This is because the evidence of record supports the finding that the claimant is limited to light work with postural limitations due to severe Stage1 Diastolic dysfunction as well as degenerative disc disease.

TR 25.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, and ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations. TR 20-21. The Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. Appx. 395,401 (6th Cir. 2018). (*citing Shepard v. Comm'r Soc. Sec.*, 705 F. Appx. 435, 442- 43 (6th Cir. 2017) and *Rudd v. Comm'r Soc. Sec*., 531 F. Appx. 719, 728 (6th Cir. 2013)). The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

## 2. Mental Residual Functional Capacity ("RFC")

Plaintiff maintains that the ALJ afforded significant weight to the previous ALJ decision and the current State Agency psychological examination and does not recognize any other opinion in the record. Docket No. 19-1, p. 16. Plaintiff further maintains that "courts generally disfavor non-examining opinions concerning psychological issues." *Id*. Plaintiff argues that an ALJ's reliance on the opinions of state reviewing, non-examining and consulting physicians should be viewed with some skepticism when impairments are primarily psychiatric. *Id. citing Ortiz v. Colvin*, 2016 WL 4005605, at *8 (D. Conn. July 26, 2016). Plaintiff contends that "notations of slight improvement, minimal improvement, some improvement, worsening, and minimally worse are a weak basis for a reviewing assessment of Plaintiffs mental health." *Id*. at 17.

Defendant responds that "in determining Plaintiffs functional ability, the ALJ properly gave significant weight to the prior decision and to the opinion of the agency non-examining doctors who adopted the prior decision's findings." Docket No. 20, p.10. Defendant argues that the ALJ is required to consider non-examining opinions. *Id*. at 11. Defendant further argues that "the ALJ fully considered the Centerstone treatment record, and the records highlighted by Plaintiff support the ALJ's finding that Plaintiffs condition was the same as it was during the time of the prior decision, which was further supported by the non-examining doctor's opinion." *Id*. at 12.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting,

carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for light work as demonstrated in the statement of error above. TR 20.

In so finding, the ALJ considered Plaintiffs subjective complaints of pain. TR 21. Specifically, the ALJ stated:

> She also reported that mentally she suffers from depression with suicidal ideation as recent as one-and-half months prior to the hearing; PTSD with anxiety attacks; and ADHD. She further said that due to her combination of mental impairments, she has problems getting along with other people, completing tasks, maintaining concentration, handling stress or changes in routine, and following instructions. But she admitted she could shop in stores, drive a car, spend time with others (i.e., family cookouts, lives with her boyfriend), take care of some housework (i.e., laundry, cleaning) and prepare simple meals weekly. Of note, the claimant further testified that she has not attempted to work since 2011 because there are no jobs where she lives (Exs. BlE, B4E and B6E-B7E; Testimony).

TR 21.

The ALJ also considered treatment records from Centerstone and Plaintiffs testimony, stating:

> Prior to the alleged onset date, the claimant received mental health treatment at Centerstone for major depressive disorder (MDD) and PTSD. In 2014 she reported falling and tripping a lot while on lithium as well as endorsing a lot of anxiety, difficulty sleeping, poor appetite, depression, feelings of being overwhelmed and some suicidal ideations but no active plan (Ex. Bl0F). In June 2015, she began to also receive mental health treatment for ADHD (Ex. B4F, p.52) and in the next month, her provider at Centerstone continued her on Paxil, Buspar and Strattera. In September 2015, she stated her medications were doing well but she had not been sleeping too well due in part to a rough couple of weeks, which she attributed to situational stressors including her boyfriend and mother (Ex. B4F, p.66). Likewise, in early 2016, she reported stress triggered by dealing with her mom and brother's illnesses as well as endorsed a variety of symptoms. But she also reported she was still writing in her journal, her medication was working, she was cleaning, and she was working on a quilt for her daughter (Ex. B4F, pp. 39, 45). Meanwhile, she appeared appropriately groomed with euthymic mood and appropriate affect. She also had, objectively, organized and appropriately abstract thought process, intact associations, focused concentration, good insight, and intact memory (Ex. B4F, p. 51).

Meanwhile, she continued to receive outpatient treatment consisting of medications and therapy at Centerstone for MDD, PTSD, and ADHD. According to a medical note dated August 15, 2016, she had last been seen in early March 2016 when she had been continued on her mental health medications. At the visit, she reported medication compliance and denied side effects, but also reported worsening depression, excessive sleeping, and indicated she had some stressors including falling down stairs and being bitten by a dog. She endorsed decreased appetite and passive suicidal ideation but denied intent and homicidal ideation. Upon mental status exam, she had depressed/sad mood with sad affect, but she still exhibited focused concentration, intact associations, good insight, average intelligence, and intact memory. As a result, her provider continued her Buspar, Paxil, and Strattera as well as gave her a trial of Rexulti (Ex. B4F, pp. 26-28). Later in September 2016, her mental health provider increased her Rexulti medication but in her next follow up visit to Centerstone on November 11, 2016, she reported she had stopped taking it due to possible side effects. Despite not taking Rexulti, she had been copying fairly well other than the situation with her mother (dementia). She had stable mood, good sleep, appetite within normal limits, and denied suicidal ideations. Moreover, other than dysphoric mood but appropriate affect, an updated mental status exam reflected no significant change from the earlier exam performed in March of that year (Ex. B4F, pp. 11-12).

- - -

Meanwhile, the claimant continued to receive mental health treatment at Centerstone from 2017 through 2018 for PTSD, ADHD and MDD (see Exs.B5F, B8F and Bl0F). In early January 2018, she reported she had been caring for her mother who had dementia including going over to her house to care for her. She endorsed some suicidal ideation but also reported general stability on her medication regimen (Ex. B8F, p.13). In the next month, she endorsed trouble sleeping saying her brain wouldn't shut down (Ex. Bl0F, p. 28). During the foregoing period, mental status exams found she had euthymic mood with appropriate affect and she continued to exhibit focused concentration, intact associations, good insight, and recent memory (Ex. Bl0F, pp. 35-36, 45-46). Then on March 3, 2018, she reported her brother had just passed away the night before. She endorsed increased mental health symptoms including loss interest, feeling down, decreased appetite and sleep, lack of concentration, feeling bad about self, racing thoughts, and worry about her elderly mother but denied suicidal ideations. Nonetheless, she appeared cooperative and engaged in treatment (Ex. B10F). Later that month, on March 31, 2018, she said she wanted to go back to her hobbies and be motivated (Ex. Bl0F, p. 11).

As noted, regarding her mental limitations, the medical record establishes she [sic] treated at Centerstone for depression, PTSD with anxiety, and ADHD symptoms. She has been on mental health medications for several years, but her condition has largely remained the same. She testified at the hearing that her depression

13

medications help but depression symptoms are better in spring/summer, then worse in winter. She also has noticed some improvement with anxiety medications (Testimony). She talked to a counselor about occasional suicidal ideations and they increased her medications. In appointments, she reports situational stressors such as caring for her mother, who has dementia, and the death of her brother in 2018. But in visits, she reports coping fairly well with those stressors and testified at the hearing that her mother has since been placed in a nursing home. In addition, the claimant reported a lack of motivation to participate in activities, including in hobbies. However, she has remained able to care for herself, her home (lives with boyfriend), prepare meals, do her own laundry, shop for short periods, and drive herself to Centerstone appointments. Moreover, she testified that she has not attempted to work since 2011 because there are no jobs where she lives. Furthermore, she reported she does not like to be around people and does not like to go shopping but said she can shop for 30 minutes at a time (Exs. B4E, B7E, B4F-B5F, B8F and Bl0F; Testimony). Based on the foregoing, the undersigned finds that the evidence of record as a whole does not support any modification to the mental residual functional capacity assessment established in the prior hearing decision.

TR 22-24.

The ALJ also considered the opinion evidence, stating:

> Regarding the opinion evidence, in finding the claimant has the significant mental limitations outlined in the above residual functional capacity, the undersigned gave some weight to the third party statement issued by the claimant's sister-in-law Misty Kinney located at Exhibit B10E. Mrs. Kinney indicated the claimant has anxiety and has difficulty following simple instructions, remembering things, and states that she could not hold a job. To the extent this concerns the functionality of the claimant, it is adequately accounted for by limiting the claimant to one-to-four step tasks, and contrary to the statement, nothing in the record demonstrates the claimant could not do that. Rather, the record shows the claimant gets herself to her appointments, completes self-care, and takes care of household chores. Additionally, as previously noted, the claimant was also caring for her mother during the relevant period at issue before her mother went into a nursing home. Moreover, she has had no hospitalizations or mental health crises since the date of the prior hearing decision; nor has she reported any decompensation, despite grief over the loss of her brother and mother going into a nursing home. Accordingly, the undersigned gives significant weight to the mental limitations established in the prior hearing decisions residual functional capacity finding (Ex. B1A) and significant weight to the State agency psychological consultants who largely incorporated the mental assessment from the prior hearing decision into their own assessments (Exs. B2A-B3A and B8A-B9A). This is because those limitations are well-explained and consistent with the evidence of record as a whole in the instant case, which fails to reflect any significant worsening of her mental condition or decline in her mental functional capacity during the relevant period at issue.

TR 25.

14

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record and ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations. TR 20-21. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

### 3. ALJ's Development of the Record

Plaintiff contends that "the ALJ recognized severe physical impairments and crafted a RFC with physical limitations . . . yet the ALJ failed to develop the record despite these acknowledgments." Docket No. 19-1, p. 14. Plaintiff further argued that "if the ALJ developed the record, it is likely that some type of manipulative limitation may be appropriate." *Id*. at 14.

Defendant responds that "the determination to give diminished weight to the agency doctor does not trigger a duty to further develop the record, as Plaintiff suggests." Docket No. 20, p. 9. Defendant argues that the ALJ does not abuse her discretion by declining to obtain an additional assessment when the record contains a sufficient amount of evidence pertaining to an impairment. *Id*. Defendant further argues that Defendant' s representative stipulated that the record was complete and the ALJ may rely on this representation at the hearing. *Id*. at 10.

Plaintiff replies that the ALJ was interpreting the evidence itself and not interpreting opinions based on the evidence. Docket No. 21, p. 1. Plaintiff argues that this court has recently held that the ALJ must generally obtain a medical expert opinion before rendering an RFC unless the ALJ can make a commonsense judgment about functional capacity. *Id.*

Although Plaintiff correctly asserts that the ALJ must fully develop the record, Plaintiff fails to show that the ALJ did not do so. The duty of the ALJ is to "fully and fairly develop the administrative record," and where the evidence suggests that a claimant may well meet a listed impairment, the ALJ must develop the evidence in order to determine whether or not the listing is

15

met. J*ohnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so, the ALJ must identify the reasons and basis for crediting or rejecting certain items of evidence (*see, e.g., Morehead Marine Servs. v. Washnock*, 135 F. 3d 366, 375 (6th Cir. 1998)), as there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision (*Hyatt Corp. v. N L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).

An Administrative Law Judge is not required to base their RFC determination on the opinion of a physician. *Rudd v. Comm'r of Soc. Sec.*, 531 F. Appx. 719, 728 (6th Cir. 2013). Recently, the Sixth Circuit held:

> No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached.

*Tucker v. Comm'r of Soc. Sec.*, 775 F. Appx. 220, 226 (6th Cir. 2019)

The ALJ in this instance made a "connection between the evidence relied on and the conclusion reached" as demonstrated in the statement of errors above. Because the ALJ developed the evidence and adequately explained the reasons and basis for her conclusions, and because the ALJ's findings are supported by "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," substantial evidence exists, and the decision of the ALJ must stand.

### 4. Substantial Evidence

Plaintiff contends that the ALJ failed to support her decision with substantial evidence. Docket No. 19-1, p. 15. Plaintiff further contends that due to the ALJ's lack of substantial evidence used to support their decision, the ALJ should have further developed the record. *Id.*

Defendant responds by contending that "when the record contains a sufficient amount of evidence pertaining to an impairment, an ALJ does not abuse his or her discretion by declining to

obtain an additional assessment." Docket No. 20, p. 9. Defendant further argues that "if the record is inconsistent but still sufficient, the ALJ may reach a conclusion based on the evidence at hand without seeking additional evidence." *Id.*

Plaintiff replies that "the RFC was unsupported by opinion evidence regardless of the clinical notes." Docket No. 21, p. 1.

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance". *Bell v. Comm'r of Soc. Sec.*, 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the ALJ's decision must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F. 2d 139, 145 (6th Cir. 1980).

As has been demonstrated in the statements of error above, the record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that

much of the evidence supports the ALJ's determination that Plaintiff retained the RFC for light work. TR. 20. Because substantial evidence supports the ALJ's determination that Plaintiff has the RFC for light work, the ALJ's decision must stand.

### 5. Unconstitutionally Appointed ALJ

Plaintiff contends that "the case was adjudicated by an unconstitutionally-appointed ALJ, and the matter should be remanded for a new hearing with a different ALJ." Docket No. 19-1, p. 18. Plaintiff further contends that the SSA has already acknowledged that the ALJ in this case was "an inferior officer who was not constitutionally appointed." *Id*. at 19. Plaintiff argues that neither statute nor regulation requires issue exhaustion, therefore, this objection did not need to be raised at the administrative level. *Id*. Plaintiff further argues that under *Lucia*, the appropriate remedy for an appointment's clause claim is a new hearing before a properly appointed official. *Id.* at 20 *citing Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018). Plaintiff argues that "SSA ALJs are substantially similar to SEC ALJs" like those at issue in Lucia. Plaintiff cites cases from the Eastern District of Pennsylvania, the Eastern District of North Carolina, and the Middle District of Pennsylvania in support of their argument. *Id*

Defendant responds that Plaintiff's claim lacks merit because the ALJ was properly appointed at the date of the decision. Docket No. 20, p. 13. *Id.* Specifically, defendant contends that Plaintiffs decision was dated August 7, 2018. *Id*. This date was after the Acting Commissioner of Social Security ratified the appointments of ALJs and approved the appointments as her own. *Id*. Therefore, even if Plaintiff had raised the issue to the Appeals Council it would not have been remanded. *Id*. Defendant further contends that Plaintiffs argument should not prevail "because Plaintiff waived her right to an Appointments Clause claim when she failed to raise this issue with the agency's Appeals Council." *Id., citing Davidson v. Comm'r of Soc. Sec.*, 2018 WL 4680327,

at *2 (M.D. Tenn. Sept. 28, 2018). Defendant argues that courts have consistently refused to reach appointment-related claims that were not timely raised. *Id*. at 15.

Plaintiff replies that their objection to the constitutionality of the ALJ was timely raised. Docket No. 21, p. 3. Plaintiff argues that in *Wojciechowski v. Saul*, the court explained that issue exhaustion applies to issues within the ALJ's expertise, not constitutional issues. *Id*. 2019 WL 3458458 (E. D. Pa. July 30, 2019). Plaintiff contends that "references to other federal institutions like the Department of Treasury and National Labor Relations Board are inapposite." *Id*. at 4. Plaintiff maintains that the language in 20 CFR §404.933(a)(2) states that "a claimant "may" request a hearing, and "should" include the reasons he or she disagrees with the previous determination." *Id*. Plaintiff contends that 20 CFR 404.940 refers to prejudice and partiality, not constitutional issues. *Id.* Plaintiff further contends that "the regulations show the claimant bears a minimal role in setting the issues for the ALJ's review." *Id*. Plaintiff argues that the reasoning in *Jones Bros., Inc. v. Sec'y of Labor,* 898 F. 3d 669 (6th Cir. 2018) applies in this situation and that it is not logical to require Plaintiff to raise a challenge before an ALJ that had no power to decide it. Docket No. 21 at 4-5.

A claimant is entitled to a new hearing before a constitutionally appointed ALJ when they make a timely challenge to the constitutional validity of the appointment of the officer who adjudicates their case. *Lucia v. S.E.C*., 138 S. Ct. 2044, 2055 (2018). In *Lucia,* the Supreme Court held that the claimant had made a timely challenge because they had raised the appointments clause claim before the Securities and Exchange Commission and continued to assert the claim throughout the appeals process. *Id.* The overwhelming majority of courts in the Sixth Circuit, including the Middle District of Tennessee, have held that a Social Security Claimant's failure to raise an appointment's clause challenge at the administrative level results in a waiver of the claim.

19

*See., e.g. Berry v. Saul*, No. 1:18-CV-00046, 2019 WL 4912979, at *14 (M. D. Tenn. Aug. 20, 2019), *Davidson v. Commissioner of Social Security,* 2018 WL 4680327, at *2 (M. D. Tenn. Sept. 28, 2018). While Plaintiff cites cases from courts outside of the circuit support of their argument, the undersigned does not find these decisions persuasive as the vast majority of courts within the Sixth Circuit have held that an appointments clause claim needs to be raised at the administrative level in order to be timely.

## IV.
## RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiffs Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985*), reh 'g denied*, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**