# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DIANA L. SISK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-00342** |
| | ) | **Judge Aleta A. Trauger** |
| **ANDREW M. SAUL, Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Plaintiff Diana Sisk brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Administration's denial of her applications for disability insurance benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The matter was referred to a magistrate judge for a report and recommendation as to the disposition of the case. Following the filing of the plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 19), the magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 22), recommending that the plaintiff's motion be denied and that the decision of the Commissioner of the Social Security Administration ("Commissioner" or "SSA") be affirmed.

Now before the court are the plaintiff's timely Objections (Doc. No. 23) to the R&R, to which the SSA has responded (Doc. No. 24). For the reasons discussed herein, the court will overrule the Objections, accept the R&R, deny the plaintiff's Motion for Judgment on the Administrative Record, and affirm the Commissioner's decision.

## I.     PROCEDURAL HISTORY

Sisk filed her applications for DIB and SSI in January 2017, alleging disability beginning February 1, 2016. (Doc. No. 15, Administrative Record ("AR") 215–36.[1]) The application was denied initially (AR 104–05) and on reconsideration (AR 134–35). After a hearing on April 11, 2018, at which the plaintiff was represented by an attorney, Administrative Law Judge ("ALJ") Angele Pietrangelo issued a decision unfavorable to the plaintiff on August 10, 2018. (AR 15–27.)

The ALJ noted that Sisk had filed previous applications for Title II and Title XVI benefits in December 2013, alleging disability beginning May 31, 2011, which were denied after a final hearing in a decision issued on January 13, 2016. (AR 15.) She found that Sisk last met the insured status requirements of Title II of the Social Security Act through December 31, 2016 and that she had not engaged in substantial gainful activity since the new alleged onset date of February 1, 2016. (AR 18.) The ALJ accepted as a factual matter that Sisk suffers from severe impairments, including "Depressive Disorder; Posttraumatic Stress Disorder (PTSD); Attention Deficit Hyperactivity Disorder (ADHD); Stage 1 Diastolic Dysfunction; [and] Degenerative Disc Disease." (AR 18.) She also found that the plaintiff suffered from a non-severe impairment of diabetes mellitus, which did not significantly impact the plaintiff's ability to perform basic work activities. She found that the plaintiff's physical and mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.00, 12.04, or 12.15.

The ALJ determined that the plaintiff, through the date last insured, had the residual functional capacity ("RFC") to perform light work, but limited as follows:

> [S]he can occasionally engage in all postural activities (i.e., climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch and crawl). In addition, this individual also has the following additional mental limitations: She can

---

[1] Page number references to the administrative record are consistent with the Bates stamp number at the lower right corner of each page.

understand, remember, and carry out only simple and multistep (1-4 step) higher level detailed tasks, but cannot make independent decisions at an executive level. She can sustain adequate concentration, persistence, and pace for periods of at least two hours at a time throughout an eight-hour day with customary work breaks. She can have no more than occasional contact with the general public. She can interact appropriately with supervisors and coworkers occasionally. She can set goals and adapt to infrequent workplace changes.

(AR 20–21.) The ALJ found that the plaintiff was capable of performing her past relevant work as an assembler and quality control inspector. (AR 26.) The Appeals Council denied review on March 2, 2019 (AR 1), making the ALJ's decision the final Agency decision.

The plaintiff, through counsel, filed her Complaint initiating this action on April 26, 2019. (Doc. No. 1.) The SSA filed a timely Answer (Doc. No. 14), denying liability, and a complete copy of the Administrative Record. The plaintiff then filed her Motion for Judgment on the Administrative Record and supporting Memorandum, arguing that (1) the ALJ failed to develop the record and made the physical RFC finding "unguided by a medical professional's opinion"; and (2) the ALJ failed to develop the record as to the plaintiff's mental impairments and "craft[ed] a finding based on non-examining opinions made with insufficient examining information and discussion of the facts." (Doc. No. 19-1, at 11.) In addition, the plaintiff asserted, for the first time, that the ALJ who adjudicated her case was appointed in violation of the Appointments Clause of the United States Constitution, as a result of which her case should be remanded for a new hearing with a constitutionally appointed ALJ.

The SSA filed a timely Response (Doc. No. 20), and the plaintiff filed a Reply (Doc. No. 21). The magistrate judge then issued his R&R (Doc. No. 22), conducting a thorough review of the factual record and recommending that the plaintiff's motion be denied and that the Commissioner's decision be affirmed. The magistrate judge specifically found that the ALJ properly developed the record and properly evaluated the evidence in reaching her physical and

mental RFC determinations, that her decision was supported by substantial evidence in the record, and that the plaintiff had waived her Appointments Clause claim by failing to raise this issue at the administrative level.

## II. STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In Social Security cases under Title II or Title XVI, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, as such, entitled to benefits. 42 U.S.C. §§ 1383(c), 405(h). The court's review of the decision of an ALJ is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted).

## III. DISCUSSION

The plaintiff raises only two objections to the R&R: (1) that the magistrate judge erred in concluding that the ALJ was not required to base her assessment of the plaintiff's RFC on a physician's opinion; and (2) that the magistrate judge erred in rejecting her Appointments Clause claim as waived or untimely.

Because the latter issue may be dispositive, the court considers it first.

### A. Whether the Plaintiff's Appointments Clause Challenge Has Been Waived

Pursuant to the Appointments Clause of the United States Constitution, Congress may require that "inferior Officers" be appointed by the President, the "Courts of Law," or the "Heads of Departments." U.S. Const. Art. II § 2, cl. 2. "[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Ryder v. United States*, 515 U.S. 177, 182–83 (1995). In *Lucia v. SEC*, 138 S. Ct. 2044 (2018), decided on June 21, 2018, the Supreme Court held that ALJs in the Securities and Exchange Commission exercised "significant discretion" in carrying out "important functions" and were therefore required under the Appointments Clause to be appointed by the President, a court of law, or a head of department. *Id.* at 2047–48 (quoting *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878 (1991)). The Court reaffirmed that the "'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official" or the "Commission itself." *Id.* at 2055 (quoting *Ryder*, 515 U.S. at 183). Because the ALJs of the SEC were not so appointed, the petitioner there was entitled to a new hearing before a different constitutionally appointed ALJ. *Id.*

In response to *Lucia* and in light of an Executive Order concluding that "at least some— and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's

Appointments Clause," Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 13, 2018),[2] then Acting

Commissioner of Social Security, Nancy Berryhill, promptly ratified the appointment of the

agency's ALJs and  the Administrative Appeals Judges (AAJs) of the SSA's Appeals Council,

under her own authority, on July 16, 2018.[3] *See* Soc. Sec. Admin., EM-18003 REV 2: Important

Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in

SSA's     Administrative     Process     –     UPDATE     (Aug.     6,     2018),     available     at

https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM   (last  visited  Aug.  28,

2020). In addition, the SSA issued an Emergency Message instructing ALJs and AAJs "on how to

address Appointments Clause challenges regarding the appointment of ALJs or AAJs." *Id.* On

March 15, 2019, the SSA issued a Policy Interpretation Ruling, which further clarified how the

agency would "adjudicate cases pending at the Appeals Council in which the claimant has raised

a timely challenge to the appointment of an [ALJ] under the Appointments Clause . . . in light of

the Supreme Court's decision in *Lucia* . . . ." SSR 19-1p, 84 Fed. Reg. 9582, 2019 WL 1324866

(Mar. 15, 2019), available at  https://www.ssa.gov/OP_Home/rulings/oasi/33/SSR2019-01-oasi-

33.html (last visited Aug. 28, 2020).

The plaintiff's hearing before ALJ Angele Pietrangelo took place on April 11, 2018, before

*Lucia* was issued, but the hearing decision was not entered until August 10, 2018, after *Lucia*, after

the Commissioner's reappointment of ALJs, and after the agency posted the Emergency Message.

The plaintiff did not object to the authority of the ALJ who conducted the hearing prior to the

---

[2] "As of 2017, administrative law judges in the Social Security Administration were not appointed by the head of the agency, but rather by lower-level officials." *Davis v. Saul*, 963 F.3d 790, 792 (8th Cir. 2020)

[3] Berryhill was replaced by Andrew Saul, who was appointed effective June 17, 2019. *See* https://www.ssa.gov/agency/commissioner.html (last visited Aug. 28, 2020). Commissioner Saul represents the agency here.

hearing, nor did she address the effect of *Lucia* in her request for review by the Appeals Council (*see* AR 213) or in her Complaint in this court. The plaintiff raised the issue for the first time in her Motion for Judgment on the Administrative Record, filed on August 8, 2019, asserting that, as of the time of the plaintiff's hearing in April 2018, "the ALJ was an inferior officer who was not constitutionally appointed." (Doc. No. 19-1, at 21.) She argues that *Lucia* requires remand for a new "hearing before a properly appointed official" (*id.* at 20 (quoting *Lucia*, 138 S. Ct. at 2055)) and that she had no obligation to exhaust this issue at the administrative level, because neither statute nor regulation requires such exhaustion. The Commissioner opposes remand, arguing that the plaintiff did not raise a timely Appointments Clause challenge before the SSA or in this court and has therefore waived her right to bring such a challenge.

The Supreme Court has not directly addressed the question of whether Appointments Clause challenges in the SSA context are waived if not raised at the administrative level. However, in *Sims v. Apfel*, 530 U.S. 103 (2000), the Court examined more generally whether, "to obtain judicial review of an issue, [a claimant] . . . must specify that issue in his request for review by the [SSA's Appeals] Council." *Id.* at 107. A plurality held that claimants are not required to raise issues before the Appeals Council to preserve them for judicial review, because issue exhaustion is not mandated by statute and because SSA proceedings are not sufficiently adversarial to compel a judicially imposed exhaustion requirement. In holding that issue exhaustion before the Appeals Council is not required to preserve arguments for judicial review, the *Sims* Court also noted that "[w]hether a claimant must exhaust issues before the ALJ is not before us." *Id.*

Three circuit courts of appeal, to date, have addressed the question of whether a claimant must administratively exhaust an Appointments Clause challenge to SSA ALJs and have reached

different conclusions.[4] First, the Third Circuit held that Social Security claimants are not required to exhaust Appointments Clause claims. *Cirko o/b/o Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020). Relying on *Lucia* and *Freytag*, in which the Supreme Court excused a plaintiff's failure to raise an Appointments Clause challenge in Tax Court in light of "the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers[,]" *Freytag*, 501 U.S. at 879, the Third Circuit determined that "Appointments Clause challenges—given their importance to separation of powers and, ultimately, individual liberty—are claims for which a hearing on the merits is favored." *Cirko*, 948 F.3d at 155. "[G]uided by" *Sims*, the Third Circuit concluded that the non-adversarial nature of SSA ALJ hearings "cut[s] against an exhaustion requirement[.]" *Id.* at 156. In addition, the court found that requiring exhaustion in that context "would impose an unprecedented burden on SSA claimants who are subject, not to an adversarial process, but to an inquisitorial review process." *Id.* at 156. Weighing the interests of the individual litigants against the government's interests, the court noted that individual interests are "especially acute" in proceedings to determine access to disability benefits, while the government's interest in requiring exhaustion is "negligible at best," because constitutional challenges are "outside the [agency's] competence and expertise." *Id.* at 157–58 (citation omitted). The court also believed that SSA ALJs did not have the ability to cure the unconstitutionality of their own appointments and that it would be "unrealistic to expect that the [Commissioner] would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context." *Id.* (citation omitted).

The Tenth Circuit, more recently, rejected the rationale adopted in *Cirko* and held that

---

[4] As of the date of this opinion, appeals are also pending in the Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits.

claimants "waive[] their Appointments Clause challenges by failing to exhaust them before the SSA." *Carr v. Commissioner*, 961 F.3d 1267, 1268 (10th Cir. 2020), *petition for cert. filed*, No. 19-1442 (June 29, 2020). In *Carr*, the Tenth Circuit court noted that the "general rule" is that "an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court." *Id.* at 1271 (quoting *Sims*, 530 U.S. at 112 (O'Connor, J., concurring)). It found that a failure to exhaust an Appointments Clause challenge at the administrative level in the SSA context thwarted the basic purpose of issue exhaustion, as it "deprived the SSA of its interest in internal error-correction" and undermined "both judicial and agency efficiency." *Id.* at 1273.

In addition, the court distinguished *Sims* on the basis that *Sims* only addressed the question of whether a claimant waived issues not included in her petition for Appeals Council review, while the appellees in *Carr* "did not present their Appointments Clause challenges to the ALJs or the Appeals Council." *Carr*, 961 F.3d at 1274. Moreover, in *Sims*, the claimant "'did everything that the agency asked of her' by filling out the [appeal] form, even though she did not specify the contested issues on appeal," *id.* at 1274 (quoting *Sims*, 530 U.S. at 114), while,

> [b]y contrast, SSA ALJs must notify claimants of the "specific issues to be decided" at each hearing, 20 C.F.R. § 404.938(b)(1), and claimants must "notify the [ALJs] in writing at the earliest possible opportunity" if they "object to the issues to be decided at the hearing," *id.* § 404.939. If Appellees' ALJs did not list the Appointments Clause as an issue "to be decided," Appellees needed to object and raise it.

*Carr*, 961 F.3d at 1274–75. The court implicitly found that the Third Circuit had placed "undue weight" on the "non-adversarial" nature of SSA ALJ proceedings, given that Justice O'Connor's controlling concurrence in *Sims* did not rely on that ground and, moreover, that Appointments Clause challenges are, by their nature, adversarial. *See id.* at 1275 (citing the *Sims* majority as recognizing that a proceeding is adversarial when the "parties are expected to develop the issues," 530 U.S. at 110, and noting that 20 C.F.R. § 404.940 requires a claimant who "object[s] to an

ALJ's authority" to "notify the [ALJ of the objection] at [the] earliest opportunity").

And finally, *Carr* rejected *Cirko* as "unpersuasive and counter to [Tenth Circuit] precedent," insofar as it presumed that constitutional challenges generally and Appointments Clause challenges specifically are "beyond the power of the agency to remedy." *Carr*, 961 F.3d at 1275 (quoting *Cirko*, 948 F.3d at 157). Rather, the Tenth Circuit had already held that an administrative Appointments Clause challenge would have the effect of notifying the agency of the need to properly appoint its ALJs, a remedy that was within the agency's authority, and that such challenges would not be futile, because the Appeals Council can vacate a judgment issued by an unappointed ALJ. *Id.* (citing *Malouf v. SEC*, 933 F.3d 1248, 1255 (10th Cir. 2019) (holding that an SEC claimant waived an Appointments Clause challenge he did not raise before the agency), and *Energy W. Mining Co. v. Lyle ex rel. Lyle*, 929 F.3d 1202, 1206 (10th Cir. 2019) (holding that a claimant waived an Appointments Clause challenge he failed to raise in his administrative hearing for Department of Labor benefits)).

The Eighth Circuit, addressing the same issue, agreed with the Tenth Circuit, likewise holding that claimants who failed to raise Appointments Clause challenges before the SSA waived them. *Davis v. Saul*, 963 F.3d 790, 791 (8th Cir. 2020), *petition for cert filed*, No. 20-105 (July 29, 2020); *see also Hilliard v. Saul*, 964 F.3d 759, 763 (8th Cir. 2020) (holding that the plaintiff "did not raise to the ALJ an Appointments Clause challenge, so this court need not consider it"). In *Davis*, the applications for benefits of three claimants had been fully resolved at the agency level, and they had filed suit in federal court, seeking review of the agency's decisions, before *Lucia* was issued. After a magistrate judge had recommended that the agency's decisions be affirmed, each claimant moved for leave to file supplemental briefs to raise an Appointments Clause challenge for the first time. The district court permitted the briefing but declined to consider the argument

on the basis that it had been waived. *Davis*, 963 F.3d at 792.

The Eighth Circuit affirmed, noting that, even following *Sims*, it had held that exhaustion before an ALJ is required. *Id.* at 793 (citing *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003)). And it rejected the plaintiffs' arguments that exhaustion would have been futile and that the court's exercise of its discretion to consider a non-exhausted claim was warranted. In particular, the court took notice of the "practical effect" of "potentially upsetting numerous administrative decisions because of an alleged appointment flaw to which the agency was not timely alerted" and "recognize[d] the perverse incentives that could be created by allowing claimants to litigate benefits before an ALJ without objection and then, if unsuccessful, to secure a remand for a second chance based on an unexhausted argument about how the ALJ was appointed." *Id.* at 795.

The vast majority of district courts confronted with the issue following *Lucia*, both before and after these appellate decisions were issued, including those within the Sixth Circuit, have held that claimants must raise an Appointments Clause challenge at some point during an SSA proceeding to preserve it for judicial review. *See, e.g.*, *Chamberlin v. Comm'r of Soc. Sec.*, No. 19-10412, 2020 WL 2300240, at *5 (E.D. Mich. May 8, 2020) ("This Court is one of the majority of courts that has found that a social security claimant forfeits an Appointment Clause challenge by failing to raise it in the administrative proceedings.").[5]

Although the Sixth Circuit has not reached the precise issue, it has repeatedly held that Appointments Clause claims are subject to exhaustion and forfeiture. *See, e.g.*, *Island Creek Coal Co. v. Young*, 947 F.3d 399, 402-03 (6th Cir. 2020) (denying request for remand on the plaintiff's Appointments Clause challenge on the basis of forfeiture of the claim); *Jones Bros., Inc. v. Sec'y*

_____

[5] The Commissioner represents that, as of the date it filed its Response, 57 out of 61 district courts outside the Third Circuit have so held. (Doc. No. 24, at 3 & n.1.)

*of Labor*, 898 F.3d 669, 678 (6th Cir. 2018) (noting that the Sixth Circuit generally expects parties to raise Appointments Clause "challenges before the Commission and courts to hold them responsible for failing to do so" but excusing the forfeiture in that particular case). In light of this precedent, the reasoning of the Eighth and Tenth Circuits, and in the absence of further guidance from the Sixth Circuit or the Supreme Court, this court likewise concludes that a Social Security claimant's Appointments Clause challenge raised for the first time on judicial appeal is untimely and therefore forfeited.

Accordingly, the court declines to review this issue on the merits and simply finds that the plaintiff is not entitled to relief on the basis of this claim, and the magistrate judge did not err in rejecting it.

### B.     The ALJ's RFC Assessment

The plaintiff claims that, while the Sixth Circuit has not embraced a "brightline rule requiring the ALJ to base his or her RFC finding on a physician's opinion," courts in this circuit generally require an ALJ to obtain an expert medical opinion before including functional limitations in the RFC "*unless the ALJ can 'render a commonsense judgment* about function capacity' based on evidence that 'shows relatively little' impairment." (Doc. No. 23, at 1–2 (quoting *Mathers v. Berryhill*, No. 3:18-CV-00418-LLK, 2019 WL 1427555, at *3 (W.D. Ky. Mar. 29, 2019), and *Johnson v. Saul*, No. 1:18-0041, 2019 WL 3647058, at *5 (M.D. Tenn. July 19, 2019), *report and recommendation adopted*, 2019 WL 3574250 (M.D. Tenn. Aug. 6, 2019) (emphasis added by the plaintiff)).)

The plaintiff also objects, in an even more perfunctory manner, that "the mental health portion of this case is also not conducive to commonsense judgement by a layman. We do not have access to a functional opinion from a mental healthcare professional that considered significant evidence such as Plaintiff's thoughts of self-mutilation from February 21, 2017 or her

contemplated, but un-attempted, suicide plan reported February 1, 2018." (*Id.* at 2–3 (internal record citations omitted).)

The Sixth Circuit has repeatedly "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017), and *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x. 719, 728 (6th Cir. 2013)); *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) ("[The plaintiff] contends that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion. The effect of a claimant's conditions on her ability to work, however, is a determination expressly reserved for the ALJ. Thus, the premise of [the plaintiff's] argument—that the ALJ lacked the capacity to make this determination—is wrong."). The premise of the plaintiff's argument in this case is similarly wrong.

Moreover, the ALJ's RFC determinations are clearly supported by substantial evidence in the record. Regarding the plaintiff's mental RFC specifically, the ALJ gave some weight to the testimony of the plaintiff's sister-in-law and significant weight to the "mental limitations established in the prior hearing decisions" and to the 'State agency psychological consultants who largely incorporated the mental assessment from the prior hearing decision into their own assessments." (AR 25.) The ALJ found that the limitations assessed in these opinions were "well explained and consistent with the evidence of record as a whole in the instant case, which fails to reflect any significant worsening of [the plaintiff's] mental condition or decline in her mental functioning capacity during the relevant period at issue." (*Id.*) The ALJ reached that conclusion after a fairly exhaustive summary of the evidence in the record.

Regarding the ALJ's physical RFC, the plaintiff seems to be complaining that the ALJ found her more limited than the agency consultant, who did not find either the degenerative disc disease or the Stage 1 diastolic dysfunction to be severe impairments. The ALJ rejected that conclusion and found that they were. She noted that "none of the medical consultants completed a physical assessment setting forth any functional limitations and the prior hearing decision found the claimant to have no severe physical impairments." (*Id.*) In light of the new findings of degenerative disc disease and Stage 1 Diastolic dysfunction, the ALJ concluded that the plaintiff had severe impairments, as a result of which she was limited to light work with certain postural limitations. (*Id.*) This finding was supported by common sense and substantial evidence in the record, particularly her treating physician's recommendation that she walk two miles a day.

The plaintiff also contends that the ALJ erred in failing to "develop the record" by obtaining "a functional opinion from a healthcare professional based on an examination," because the plaintiff testified that she wore gloves to the hearing because these helped with her hands hurting (AR 48), but she did not have insurance to have her hands assessed. (Doc. No. 23, at 2.) The plaintiffs claims that, if the ALJ had obtained such a "functional opinion . . . based on an examination, it is likely that a manipulative limitation would be warranted, and the Step Four finding of available past work would be in jeopardy, as these jobs required frequent reaching, handling, and fingering." (*Id.*)

The assertion that another medical examination would likely have resulted in a manipulative limitation is entirely speculative. Moreover, the ALJ acknowledged that the plaintiff reportedly had had surgery in 2003 for right-hand tendinitis and had received treatment for a dog bite to her finger in April 2016, for which she received a tetanus shot and a Band-Aid. The ALJ recognized that the plaintiff testified at the hearing that she had problems with her hands,

specifically pain and swelling, and that she wore gloves to the hearing because they helped her, but the ALJ also observed that there was no evidence in the treatment records to corroborate her claim concerning limited ability to use her hands. At the close of the hearing, the plaintiff's representative stipulated that the record was complete. (AR 60.) Notably, the plaintiff was represented by an attorney at the hearing, and the ALJ was entitled to rely on the record as it stood. The plaintiff's belated assertion that the ALJ should have developed the record further, by obtaining an additional medical assessment, is without merit. The circumstances here did not give rise to a heightened obligation on the part of the ALJ to develop the record. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) ("[W]e examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing.").

## IV.    CONCLUSION

For the reasons set forth herein, the court accepts the R&R in its entirety and will enter an order denying the plaintiff's Motion for Judgment on the Administrative Record and affirming the Commissioner's denial of benefits.

_____
ALETA A. TRAUGER
United States District Judge